LAURA LINNEMAN and FRED J. LINNEMAN v. E. W. HENRY, Appellant.
—291 S. W. 109.

Court en Banc, February 15, 1927.

1. **APPELLATE JURISDICTION: Title to Real Estate.** Regardless of the amount involved, a suit to cancel a deed of trust upon real estate is a suit involving title to real estate, of which the Supreme Court has exclusive appellate jurisdiction.

**2. CANCELLATION: Extraordinary Power: Burden of Proof: Fiduciary Relation.** The cancellation of an executed contract is an exercise of the most extraordinary power of a court of equity, which should not be exercised except in a clear case and upon strong and convincing proof. But this rule is affected by the general rule that, where there existed a fiduciary relation between the parties to the transaction, such as attorney and client, the party who held the position of superiority and influence by virtue of the relation has the burden of proving that the transaction was fair and equitable.

**3. EQUITY: Deference to Chancellor: Necessary Amount of Proof.** In an equity suit the appellate court is not bound by the findings of the trial chancellor, and will not defer to them, even when the main evidence is the oral testimony of witnesses who testified in his presence, unless satisfied that such findings are supported by the required amount of proof, and unless so satisfied will review the evidence and make its own findings of fact.

**4. CANCELLATION: Fraudulent Representations: Insufficient Proof.** The ground for the cancellation of a note for $3,000, the reasonable value of legal services, and signed by a husband, and a deed of trust on his wife's property securing the same and signed and acknowledged by both of them, being, not that they were overreached and unduly influenced, by the payee, their attorney, knowingly to execute them, but that while the husband could sign his name he could not read, and the wife did not read the deed of trust, and they did not know that it mentioned the $3,000-note, and that the provision securing its payment was included in the deed of trust by the attorney's fraudulent representations that it included only a note for $1600 for money they then borrowed from him, and their testimony being discredited in numerous material particulars, and his, in flat contradiction of theirs, consistent and supported by other disinterested witnesses and unassailable documents, the proof is not sufficient to authorize a cancellation. **Held,** by Walker, J., dissenting, first, that overpersuasion and undue influence, in the presence of pitiable ignorance, are, to one skilled in artifice, unnecessary instrumentalities in the perpetuation of a fraud; and, **second,** the evidence fails to show a fair consideration for the $3,000-note.

**5. ―――: Deed of Trust on Wife's Land: To Secure Husband's Note.** Where an attorney held the note of a husband for $3,000, given for services rendered and to be rendered and secured by a chattel mortgage on personal property, and agreed with him and his wife that he would loan them $1600 only upon condition that the $3,000-note should also be secured by the same deed of trust upon her real estate, and if so secured he would release the chattel mortgage, and did attempt to release it, and she was interested in its release in order that the personal property might be sold, and the note being a valid and binding note of the husband, and its existence known to the wife at the time she executed the deed of trust, there was a valuable consideration moving from her to the attorney for her execution of the deed of trust.

**6. CHATTEL MORTGAGE: Release: By Written Instrument: No Surrender of Note.** Whatever may be said of the legal sufficiency of a written instrument purporting to release personal property from the lien of a chattel mortgage, without a surrender and cancellation of the note, the mortgagee, after executing it, cannot enforce the mortgage against the mortgagor or the property described in it after it comes into the hands of purchasers.

---

Corpus Juris-Cyc. References: Appeal and Error. 4 C. J., Section 2868, p. 898, n. 91   Cancellation of Instruments. 9 C. J., Section 190, p. 1252, n. 79; Section 195, p. 1254, n. 3; p. 1256, n. 31.   Courts, 15 C. J., Section 511, p. 1080, n. 53.   Husband and Wife, 30 C. J., Section 603, p. 907, n. 5.   Mortgages, 41 C. J., Section 331, p. 447, n. 46.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Special Judge.

Reversed and remanded (*with directions*).

*W. H. Meschede* and *R. D. Johnson* for appellant.

(1) The allegations of the petition must be proved as alleged, otherwise there is a failure of proof and the verdict must be set aside. Sec. 1452, R. S. 1919. The plaintiffs alleged the relation of attorney and client between them and the defendant E. W. Henry. All the plaintiffs' testimony was directly to the effect that no such relation existed, and negatived the material allegations of the petition by their evidence, constituting a failure of proof. Davis v. Drew, 132 Mo. App. 503; Hinsler v. Stix, 113 Mo. App. 162; Patterson v. Met. St. Ry., 211 Mo. 498; Collins v. Hutchings, 194 S. W. 733; Raming v. Railroad, 157 Mo. 477. Plaintiffs must recover on their petition and not on defendant's answer. Ingwerson v. Railroad, 205 Mo. 328; State v. Baird, 231 S. W. 627; 21 C. J. p. 672, sec. 855. (2) The burden of proof of the allegations of the petition is upon the plaintiffs. In this cause the plaintiffs must prove that the relation of attorney and clients existed between them and the defendant, and also that fraud, deceit and false representations were made by the defendant and relied and acted upon in good faith by them. The evidence to establish such fraud and deceit must be clear and convincing as to leave no hesitancy in the mind of the court of its existence. Bartlett v. Brown, 121 Mo. 362; Sweet v. Owens, 109 Mo. 1; Thrasher v. Greene County, 105 Mo. 254; Beagles v. Robertson, 135 Mo. App. 323; Moran Bolt Mfg. Co. v. Car Co., 210 Mo. 729. Fraud and deceit are never to be presumed without or against the evidence. If the transaction consists with honesty and fair dealing as well as with fraud, it will be referred to the better motive. Jones v. Nichols, 280 Mo. 664; Garesche v. MacDonald, 103 Mo. 1; Warren v. Ritchie, 128 Mo. 311; Hardwicke v. Hamilton, 121 Mo. 465. (3) The plaintiffs both signed the deed of trust in question and acknowledged the same before a notary public and there was every opportunity for them to read it and fully understand the same at the time of signing and they are bound by the terms and conditions thereof. The means of knowledge of the contents of said deed of trust in question was readily open to them and before their eyes and a mere failure on the part of plaintiffs to read the same, in the absence of fraud, is no defense. Grain Co. v. Boyce Merc. Co., 203 Mo. App. 220; Bradford v. Wright, 145 Mo. App. 631. Plaintiffs are bound by their action and not their intent in the execution of the deed of trust. Acts weigh down intent. Weissenfels v. Cable, 208 Mo. 534; First

Natl. Bank v. Hall, 129 Mo. App. 286. Equity cannot give aid where parties fail to exercise ordinary care. McCaw v. O'Malley, 249 S. W. 44; Aetna Life Ins. Co. v. Detjen, 211 S. W. 911. (4) The wife of Fred J. Linneman, signed the deed of trust and thereby became surety for her husband. A wife has the right and is competent to mortgage her land to secure her husband's debts. Jones v. Edeman, 223 Mo. 312; Bell v. Bell, 133 Mo. App. 570, 573. The consideration for the execution of a deed of trust depends upon the quality and not the quantity of the same and the least benefit or advantage of the promisor, or the least injury or detriment of the promisee and suffered by him, will support a contract. Lamp Co. v. Mfg. Co., 64 Mo. App. 118; Weissenfels v. Cable, 208 Mo. 534. (5) Any act or writing by which some claim or interest is surrendered to another, the giving up of or abandoning a claim or the right to another, constitutes a release within the meaning of the law. Winter v. Cable, 160 Mo. 175. (6) As between attorney and client, where there is charge of fraud against the attorney, the burden of proving same remains with the client, and there is no presumption that fraud was practiced by an attorney. Beagles v. Robertson, 135 Mo. App. 323; Thrasher v. Greene Co., 105 Mo. 244. An attorney's fee, to be fraud, must be so unconscionable that no man in his right senses and not under delusion would make, and no honest or fair man would receive or accept. Ball v. Reyburn, 136 Mo. App. 549. Where services are rendered by an attorney at the request of another, or where the benefits of such services are knowingly accepted, a promise to pay therefor will be presumed. Taussig v. Ry. Co., 166 Mo. 28; 6 C. J. p. 729, sec. 310.

*Sam C. Major* and *James & Shook* for respondents.

(1) The plaintiffs need not rely solely on the confidential relation existing between them and defendant, as clients and attorney, but aside from any such confidential relation, the evidence conclusively proves that the appellant took advantage of the ignorance of the plaintiffs and practiced a fraud on them, to their detriment. Whether the relation of attorney and client existed or not, is wholly immaterial in this case, if the evidence offered by the plaintiffs is true. (2) The deed of trust securing the $1600, payable to Mr. Henry himself, drawn up by him, was presented to plaintiffs, for their signature. Plaintiff Fred Linneman could neither read nor write. He had been taught to sign his name, which was the extent, apparently, of his education. His wife, having lived in the country all her life, was not familiar with business transactions, knew nothing about the contents of a deed of trust, even after she had read it. Mr. Henry says that he did not read it to them, nor did they read it themselves. The

$3000-note described in the deed of trust was inserted without the knowledge or consent of either one of the plaintiffs. If Mr. Henry was representing the plaintiffs, as he claims, then he committed a fraud on them, by his failure to advise them fully of the contents of this deed of trust, and, by looking out for his own interest, in getting a $3000-note secured. (3) Plaintiffs' petition does not rely altogether on the relation of attorney and client, between plaintiffs and defendant, but relies on fraud and deceit practiced by the defendant, regardless of such relation. The parties do not stand on equal footing and the plaintiffs relied upon the defendant and his representations with reference to the deed of trust and its contents. Martin v. Baker, 135 Mo. 503; Jones v. Belshe, 238 Mo. 524; Barnard v. Duncan, 38 Mo. 186. Where one party to a contract has superior knowledge or knowledge which is not within the fair and reasonable reach of the other party, and which he could not discover by the exercise of reasonable diligence or means of knowledge, which are not open to both parties, alike, he is under a legal obligation to speak and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain. 12 R. C. L. p. 309, sec. 69. Where a relation of trust and confidence exists between the parties, it is the duty of the party in whom the confidence is reposed to make full disclosure of all the material facts within his knowledge, relating to the transaction in question and any concealment of material facts by him, is a fraud. 12 R. C. L. p. 311, sec. 72. (4) The debt of $3000 asked to be secured was Fred Linneman's individual debt and there was no consideration passed to Laura Linneman, for securing said $3000-note. Bell v. Bell, 133 Mo. App. 570. (5) There was no consideration for the deed of trust to secure the $3000-note.

BLAIR, J.—Suit in equity to cancel a note for $3000 and deed of trust on real estate in Howard County securing the same. From a judgment for plaintiffs an appeal to this court was granted to defendant. We will refer to respondents and appellant as plaintiffs and defendant, as in the trial court.

A suit to cancel a deed of trust upon real estate is a suit involving the title to real estate and this court has exclusive appellate jurisdiction, regardless of the amount in controversy. [Conrey v. Pratt, 248 Mo. 576; Loewenstein v. Ins. Co., 227 Mo. 100; Vandeventer v. Bank, 232 Mo. 618.]

In substance the petition alleges that defendant was an attorney and was the legal adviser of plaintiffs, who were the owners of certain real estate in Glasgow, Missouri; that defendant was advised of an agreement of one Hannaca (said name being variously spelled in the record) to procure a loan of $7000 for plaintiffs on said prop-

erty, and of the inability of Hannaca to secure the full sum, and defendant offered to loan to plaintiffs $1600; that plaintiffs agreed to borrow said sum from defendant and to secure the payment thereof by deed of trust on said property, subject to prior liens; that defendant prepared a joint promissory note for $1600 and interest at eight per cent and that plaintiffs signed and delivered same to defendant and that defendant prepared a deed of trust and plaintiffs executed and acknowledged the same and delivered it to defendant.

It is further alleged that, prior to the execution of said note and deed of trust, plaintiffs were not indebted to defendant; that, without the knowledge of plaintiffs and willfully with intent to deceive, cheat and defraud plaintiffs, the defendant inserted in said deed of trust certain words whereby said deed of trust was made to secure the payment of an additional note from plaintiff Fred J. Linneman to defendant for $3000 and interest; that plaintiffs, believing said deed of trust only secured the payment of said $1600-note, executed said deed of trust without reading or having read to them the contents thereof and plaintiffs were thus deceived and overreached by the unfair and fraudulent practices and representations of defendant and would not have executed said deed of trust had they not been so deceived; that plaintiff Fred J. Linneman is a farmer and cannot read or write, and that his wife possesses only a very limited education and has had no experience in business matters, all of which defendant well knew; that said $3000-note is without consideration and void.

The prayer of the petition is for a decree that said deed of trust is void and does not constitute a lien upon the real estate described therein, and that it be set aside and canceled and that said note for $3000 be canceled, and that defendant be perpetually enjoined from foreclosing said deed of trust and selling said property thereunder.

After unsuccessful demurrer, defendant filed an answer admitting that he was the attorney and legal adviser of plaintiffs; that plaintiffs were on January 15, 1921, the owners of the property described in the petition, subject to incumbrances; that plaintiffs executed and delivered to defendant their note for $1600 and defendant prepared and plaintiffs executed, acknowledged and delivered their deed of trust on said property, subject to prior liens; that appropriate words were contained in said deed of trust securing the payment of a $3000-note, as well as the $1600 note, and denied each and every other allegation contained in said petition.

Said answer then alleged that defendant had been the legal adviser and attorney of Fred J. Linneman for a long time and had rendered valuable services as such to him and that on October 1, 1920, said Linneman employed defendant as his attorney and legal adviser for an additional period of one year and, in consideration of

such employment and in consideration of services theretofore rendered and to be rendered and in full settlement therefor, said Fred J. Linneman on December 30, 1920, executed and delivered to defendant his promissory note for $3000, with interest, and, to secure defendant in the payment thereof, executed and delivered to defendant his chattel mortgage on certain personal property.

Said answer alleged that on January 15, 1921, plaintiffs requested defendant to loan them $1600 and agreed that, if defendant would make said loan and would release from the chattel mortgage such personal property as plaintiff desired to sell, they would execute, acknowledge and deliver to defendant their deed of trust on the real estate here involved and certain fixtures and personal property to secure the payment of said $1600 loan and the payment of said $3000-note, which the plaintiffs agreed to and did do; that defendant thereafter released from the lien of said chattel mortgage the valuable chattels therein described and plaintiffs thereafter sold said chattels; that plaintiffs well knew the deed of trust covered both the $1600 loan and the $3000-note when they executed, acknowledged and delivered said deed of trust; that defendant has fully performed his contract as attorney for plaintiff for said year.

Defendant further alleged that he is the owner of said two notes for $1600 and $3000, and that $200 has been paid on said $3000-note, and that the remainder of said note and said $1600-note remain due and unpaid and that default has been made in the payment thereof and prayed for a decree declaring said notes to be valid, just and existing debts, and that said said deed of trust is legal, valid and binding and a lien upon the real estate and other property therein described for the payment of said debt, and praying for an order of sale of said property in satisfaction thereof.

The reply was a general denial of new matter alleged in the answer and a specific denial that plaintiff Fred J. Linneman was on December 30, 1920, indebted to defendant for legal services rendered or to be rendered by defendant, and denied the alleged employment of defendant for one year or for any time, and alleged that, if defendant obtained said $3000-note from plaintiff Fred J. Linneman, the same is fraudulent and void and was executed without consideration; that plaintiff Fred J. Linneman cannot read or write, except that he can sign his name, and, if he executed said $3000-note, he did it without knowledge that it was a note, upon the fraudulent representation and at the instance and request of defendant. Plaintiffs disclaimed knowledge of the execution of said $3000-note or that a provision securing its payment had been inserted in the deed of trust, if said provision was in said deed when they executed, acknowledged and delivered the same.

Plaintiff Laura Linneman alleged that she was the sole owner of the real estate conveyed by said deed of trust and had no knowledge of the existence of said $3000-note and never heard of it until about the time this suit was instituted; that she was not a party to said note and that no consideration passed to her for the inclusion of said $3000-note in said deed of trust. This and other allegations in the reply were repetitions of allegations made in the petition.

Plaintiffs alleged the payment of said $1600-note and further alleged that the $200 which defendant claimed was paid on the $3000-note was not paid by their knowledge or authority, but was paid out of moneys in the hands of W. L. Hannaca belonging to plaintiffs and, for that reason, defendant is indebted to the plaintiffs in said sum, for which, together with the relief prayed for in their petition, they prayed judgment.

The evidence in chief for plaintiffs consisted only of the testimony of plaintiffs, who are husband and wife. Their testimony tended to prove the following state of facts: Fred J. Linneman was the owner of a farm of about three hundred acres in Chariton County, Missouri, against which there was an incumbrance of $20,000. An exchange of properties was arranged whereby the equity in said farm was traded by plaintiffs to William L. Hannaca for certain land and buildings thereon in the town of Glasgow, in Howard County, free of incumbrances, the title to which was taken in the name of Laura Linneman. In said trade Hannaca agreed to effect a loan for plaintiffs upon such Glasgow property in the sum of $7000. He was unable to secure the full $7000, and was able to secure only something over $6600, made up of three different items. Sixteen hundred dollars of the amount was procured from defendant and a deed of trust to secure said loan of $1600 was executed in favor of defendant upon the Glasgow property.

Plaintiff Fred J. Linneman could not read and could only write his name. Mrs. Linneman could read and write, but was unfamiliar with business matters. Defendant prepared the deed of trust and presented the same to plaintiffs and represented that it was given to secure the $1600 borrowed from him. Plaintiffs had no knowledge that said deed of trust also provided that it was given to secure the payment of a note for $3000. Upon discovery of the presence in the deed of trust of the provision securing the payment of the $3000-note, plaintiffs filed this suit to cancel said note and the deed of trust. At the trial the $1600 note was admitted to have been paid.

Defendant's evidence tended to prove the following facts: Defendant is an attorney at law, practicing at Glasgow. He had known Fred J. Linneman for many years and had represented him as his attorney for several years and had never been paid for his legal services. Fred Linneman had become involved in financial troubles.

He had given notes for $15,000 in consideration of his subscription for stock in an automobile company. Defendant secured the return of $10,000 of such notes. He defended a suit brought by a bank upon $3000 of said subscription notes. He secured a verdict in defendant's favor in the trial court, only to suffer a reversal of the judgment in the court of appeals. Fred Linneman had given three different chattel mortgages upon the same personal property and criminal prosecutions were likely, if they were not threatened, and defendant had secured an adjustment of these matters. He had represented Fred Linneman and advised him in numerous other matters and had collected accounts for which he had not been paid. Fred Linneman had given defendants a note for $375 (sometimes referred to as the $275 note) as a settlement at a prior times, but said note had never been paid. In the fall of 1920 a settlement was arranged, whereby defendant turned back said $375 note and took a new note for $3000, in full settlement for all past services and in payment for defendant's legal services for one year in advance. To secure this note Fred Linneman gave defendant a chattel mortgage on personal property, including live stock, farm implements and machinery, hay, grain, etc. This chattel mortgage was duly acknowledged and was filed for record.

When defendant loaned plaintiffs $1600 on the newly acquired Glasgow property it was agreed that plaintiffs would give a deed of trust upon said property to secure, not only the $1600 loan, but also the $3000-note previously executed by Fred Linneman and secured by said chattel mortgage, and that defendant would release the property from the lien of said chattel mortgage, so that the personal property covered by it could be sold by plaintiffs. Defendant fully disclosed the fact that the $3000 note and the $1600-note were both secured by said deed of trust. Mrs. Linneman read the deed of trust and same was executed by plaintiffs and was acknowledged before Richard E. Turner, a notary public, who was also cashier of a bank at Glasgow.

The foregoing statement constitutes only part of the facts developed by the testimony. Other facts will be detailed in connection with our consideration of the correctness of the finding and decree of the trial court.

Upon said pleadings and after hearing the evidence, the trial judge found for plaintiffs and rendered a decree against defendant substantially as prayed for in the petition. He found that defendant was the confidential and legal adviser of plaintiffs and knew their financial condition and was well acquainted with their business affairs and knew that Fred Linneman could not read or write and that Laura Linneman was not familiar with business matters. He found that, when the deed of trust was executed, plaintiffs were not indebted to

the defendant, except for the loan represented by the $1600 note, which had been paid at the time of the trial; that defendant fraudulently and willfully and without the knowledge or consent of plaintiffs, inserted in the deed of trust the provision purporting to secure the $3000-note; that defendant represented that the deed of trust secured the $1600-note and that plaintiffs executed said deed of trust without having same read to them and that plaintiffs did not know that said deed of trust contained a provision securing the payment of said $3000-note, and were deceived and overreached by the unfair and fraudulent practices of defendant and by the false representations made by defendant; that if Fred Linneman signed the $3000-note he executed the same without consideration and did not owe defendant $3,000, and that said note was procured from said Fred Linneman by the false representations of defendant and without knowledge of its contents on the part of said Fred Linneman.

The trial judge found that the $3000 note and deed of trust were void, and canceled same, and found that defendant owed plaintiffs the sum of $200 collected by defendant and rendered judgment against defendant in that sum, and perpetually enjoined defendant from foreclosing said deed of trust and selling the property described therein.

The cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case and upon strong and convincing evidence. [9 C. J. 1254; Jackson v. Wood, 88 Mo. 76; Bryan v. Hitchcock, 43 Mo. 527; Cohron v. Polk, 252 Mo. l. c. 281.]

However, the foregoing rule is affected by another general rule that where a fiduciary relation, such as attorney and client, exists between the parties to a transaction, the party who held the position of superiority and influence by virtue of the relation has the burden of proving that the transaction was fair and equitable. [9 C. J. 1252; Hatcher v. Hatcher, 139 Mo. 614.]

Although plaintiffs belittled the extent of the legal services rendered by defendant, their petition alleged and the answer admitted that the relation of attorney and clients existed between the defendant and plaintiffs when the deed of trust was executed. The evidence of defendant not only showed this, but tended to show that the relation existed before and after that time. The trial judge found that the relation existed. We therefore start out with the proposition that the burden was upon defendant to show that the transaction resulting in the execution of the deed of trust from plaintiffs to defendant was fair and equitable. The disposition of the case, therefore, depends entirely upon a proper understanding of the facts.

We recognize the rule that in an equity case deference should be given to the findings of fact made by the chancellor. But an ap-

pellee court is not bound by the findings of the chancellor, simply because there is substantial evidence in the record tending to support such findings. It must be satisfied that such findings are supported by the required amount of proof. [Cohron v. Polk, 252 Mo. l. c. 281, and cases there cited.] It, therefore, becomes our duty to review the evidence and to make our own findings of fact and to render such judgment and grant such relief as the chancellor should have granted, if we conclude that his findings are not properly supported by the evidence.

It must be remembered that this is not a case where the plaintiffs claimed to have been overpersuaded or unduly influenced by their attorney and legal adviser *knowingly* to execute a deed of trust securing the $3000-note. Their contention is that they did not know such provision was in the deed at all and that such provision was in the deed without their knowledge and through the fraudulent misrepresentations of defendant concerning the contents of said instrument. The relationship of attorney and clients in such situation is only important as tending to lull the suspicions of plaintiffs and to excuse their want of ordinary care in signing the deed of trust without reading it, if they did so.

Both plaintiffs testified that the instrument was not read over by them or by defendant in their presence and that defendant only told them that it was given to secure the $1600-note. Defendant testified that the reason he made the $1600 loan was to get better security for his $3000-note. He testified positively that Mrs. Linneman read the deed of trust before it was signed and that plaintiffs fully understood the arrangement and knew that the provision securing the $3000-note was written into the deed of trust. Plaintiffs testified that they did not discover the provision in the deed of trust securing the $3000-note until April, 1921, when the title to the property was examined in connection with a proposed trade. They testified that defendant refused to discuss the provision in the deed of trust when Mrs. Linneman was present. This was denied by defendant.

If this had been all of the testimony on the question of the knowledge of plaintiffs that such provision was in the deed of trust, the finding of the chancellor would undoubtedly be sufficiently supported by the proof. But when the interest of plaintiffs in the result of the suit is considered and the fact that they are not corroborated in any respect by disinterested witnesses, and considering the fact that defendant was corroborated by facts and conversations testified to by witnesses not shown to have been in any manner interested in the case or in the parties thereto, we think plaintiffs failed to establish by the required weight of proof the fact of their alleged ignorance of the presence in the deed of trust of the provision securing the payment of

the $3000-note and that defendant has sufficiently shown that plaintiffs did know such fact.

In the first place, plaintiffs' recollection of what occurred is shown to be at least faulty by their testimony that the deed of trust was executed, acknowledged before defendant as a notary public, and delivered to defendant out at their farm. Richard E. Turner, cashier of the Peoples Bank at Glasgow, testified that, acting as a notary public, he took the acknowledgment of plaintiffs in Glasgow and in said bank. The deed of trust so shows. From his position as cashier, we are justified in assuming that Mr. Turner is a man of substance and good repute in his community. He was not shown to have been an interested witness. Defendant afterwards acquired some stock in his bank, but no reason appears why he should testify falsely or improperly favor defendant on that account. Plaintiffs were either greatly mistaken in this particular, or testified falsely in relation to it. Neither conclusion recommends them very highly as credible witnesses. At best their recollections were shown to be faulty. Their memories might be equally faulty touching other matters to which they testified.

In addition to the taking of the acknowledgment, Mr. Turner was asked if, after the deed of trust had been acknowledged before him by plaintiffs, he stated to Fred Linneman, in the presence of his wife, the following, or words to that effect: "You have done right, for now Henry will release your personal property and you can have something to sell, so that you can have some money to operate on." To this Turner replied: "Something to that effect; yes sir."

This testimony not only tends to prove that plaintiffs knew of the provision in the deed of trust securing the $3000-note, but also tends to corroborate defendant's testimony that the $3000-note was provided for in the deed of trust to enable plaintiffs to dispose of the personal property covered by the chattel mortgage previously given to secure said note.

It appeared in evidence that defendant prepared and delivered to Fred Linneman a written instrument purporting to release the personal property from the lien of said chattel mortgage and that such property was afterwards sold by the plaintiffs. Counsel seeks to discredit this instrument as being insufficient to cancel the lien of a chattel mortgage. That may be true. But if the record of a chattel mortgage may only be satisfied, as contended by counsel, by the surrender and cancellation of the note, a good reason for the inability or unwillingness of defendant to surrender the $3000-note and have it canceled is found in his testimony that the note was to be secured by the deed of trust. It was necessary to keep it in force for that reason.

Defendant is further corroborated in his testimony concerning the plaintiffs' knowledge of the presence in the deed of trust of the provision securing the $3000-note by Linas Gheens, a lifelong acquaintance of Fred Linneman. Gheens testified to a conversation had with plaintiffs at their home in which he asked them how they were going to pay defendant, and Mrs. Linneman said: "We have done paid him. We have made him safe on our property." This conversation occurred in February or March after the deed of trust was executed in January. There is nothing in the record having the slightest tendency to show any reason on the part of witness Gheens to favor defendant.

William L. Hannaca, who traded the Glasgow property to plaintiffs for their equity in the farm and who had agreed to procure the $7000 loan for them on the Glasgow property, testified that, before the deed of trust was executed, he told Fred Linneman that defendant would loan him $1600, if Linneman would give a mortgage to secure the note defendant already held against Linneman. Hannaca was not shown to have been in any wise interested in the case or in the fortunes of defendant. His good standing in the community is attested by the fact that he had served four years as mayor of Glasgow.

In addition to the testimony of defendant concerning the knowledge of plaintiffs that the deed of trust secured the payment of the $3000-note and the corroborating testimony above referred to, the testimony of plaintiff Fred Linneman, as it appears in the record, does not appear convincing. For example, plaintiff Fred Linneman testified that defendant, without the slightest provocation, fired a pistol at him while he was in defendant's office to secure some papers. This occurrence appears exceedingly unlikely to us, in view of defendant's positive denial thereof and the failure of said Linneman to offer corroboration of his testimony in that respect. If such an unjustifiable thing occurred, its ocurrence must have been known by other persons. Proof by others of such an act on the part of defendant would appear to be admissible as tending to prove that defendant was relying on force and bulldozing to enforce his claim, rather than upon its intrinsic merit.

The testimony of Fred Linneman seeking to belittle the legal services of defendant; in the light of his subsequent testimony on cross-examination tending to show that defendant had rendered substantial legal services to him over an extended period, characterizes said Linneman as a witness at least careless of the truth.

We have not the advantage possessed by the chancellor of hearing the testimony from the lips of the witnesses and observing their demeanor when giving their testimony. Notwithstanding and after making due allowance for such disadvantage, we think the fair pre-

ponderance of the testimony supports the contention of defendant that plaintiffs did know that the deed of trust contained a provision securing the $3000-note when they executed, acknowledged and delivered the same.

Plaintiff Fred Linneman admitted the genuineness of his signatures to the $3000-note and the chattel mortgage, but contended that he had no knowledge of having signed the note or having executed the chattel mortgage to secure the note. He testified to no act or statement of defendant which induced him to sign the same. He merely claimed to be utterly ignorant of the existence of said $3000-note and chattel mortgage, leaving it to inference that defendant had secured his signature to the note and his signature to and acknowledgment of the chattel mortgage by some sort of trickery. Said chattel mortgage was acknowledged before Richard E. Turner, notary public, on December 30, 1920, and was filed for record in the office of the recorder of deeds of Chariton County, on January 3, 1921. Fred Linneman denied acknowledging any instrument before Turner. The very fact that defendant caused the chattel mortgage to be filed for record, thus giving notice to all the world of the contents of the instrument, which notice would likely soon reach the attention of Fred Linneman, argues strongly to our minds that no deception or fraud was practiced by defendant in securing Linneman's signatures to the note and chattel mortgage. The testimony touching the execution of the $3000-note and chattel mortgage, outside of the acknowledgment of the chattel mortgage, was confined to Fred Linneman and the defendant. Mrs. Linneman claimed that she had no knowledge of the existence of said note and chattel mortgage. She testified to no facts having any bearing upon their execution.

Here again defendant was corroborated by disinterested witnesses. Several witnesses testified to statements of one or the other, or of both, of the plaintiffs, tending to prove that they did know of the existence of said $3000-note and chattel mortgage prior to the execution of the deed of trust. The testimony of Linas Gheens and W. L. Hannaca as to statements of plaintiffs, to which we have previously referred, tends to show knowledge on the part of plaintiffs of the prior existence of the $3000-note as a valid and binding obligation, as well as their knowledge of the existence of a provision in the deed of trust securing its payment.

The testimony of Lon Gaines, who grew up with Fred Linneman, also tends to corroborate defendant, because Gaines testified that said Linneman told him they had employed defendant by the year. Linneman did not tell Gaines how much he was paying defendant. The testimony of Richard Connard, a neighbor of the plaintiffs, was to the same effect.

In view of such testimony we cannot escape the conclusion that plaintiff knew all about the liability of Fred Linneman on the $3000-note and that same was secured by a chattel mortgage when they executed the deed of trust here sought to be canceled.

No issue of the reasonableness of the $3000 as compensation for the past and future legal services rendered and to be rendered by defendant is raised by the pleadings. Plaintiffs content themselves with a denial of the execution of the $3000-note or knowledge thereof, if it was executed, and the inclusion in the deed of trust with their knowledge of the provision securing its payment. Defendant testified to the reasonableness of the fee. Linas Gheens was asked if Mrs. Linneman told him, "We are paying him $3000," and his answer was, "I think she did, but she said, 'Look what he has done for us.'" He had asked her if the $3000 was not a pretty big amount.

We think there is no merit in the contention made that no consideration passed to Mrs. Linneman for the inclusion in the deed of trust upon her sole property of the provision securing the payment of the $3000-note, assuming that said note is the valid and binding note of her husband. We think the testimony sufficiently supports the theory of defendant that he agreed to make the $1600 loan on the property, only upon condition that the $3000-note should also be secured by the deed of trust. Mrs. Linneman was also interested in having the personal property of Fred Linneman released from the chattel mortgage in order that he might sell the same. The consideration given by defendant, in order to have the $3000-note included in the deed of trust, was his promise to release and his attempted release of the personal property from the lien of the chattel mortgage. Whatever may be said of his written consent to the sale of the personal property as an effectual release of the same from the lien of the chattel mortgage, we entertain no doubt that defendant could not thereafter have enforced said chattel mortgage against Fred Linneman or against the property described therein after it came into the hands of purchasers from Fred Linneman. We hold that sufficient consideration passed to Mrs. Linneman for permitting the $3000 note to be secured by the deed of trust on her sole property.

We therefore find from the evidence that Fred J. Linneman executed and delivered to defendant the $3000 note in settlement for past and future legal services of defendant, and that he executed, acknowledged and delivered the chattel mortgage to defendant and had full knowledge of the execution of both instruments, and that there is no evidence that he was deceived by defendant or induced by any false representations on the part of defendant to execute said instrument.

We further find that said $3000-note and chattel mortgage were valid and enforceable obligations of Fred J. Linneman at and prior

to the execution, acknowledgment and delivery of the deed of trust and were known to be such by both plaintiffs. We further find that both plaintiffs knew that the said deed of trust contained a provision securing the payment of said $3000-note and that defendant did not secure the inclusion of such provision in the deed of trust by any deceit or false representations and that a good and sufficient consideration therefor passed to both plaintiffs; and that, at the institution of this suit, said $3000-note was a valid, existing and enforceable obligation of plaintiff Fred Linneman and that said deed of trust securing the payment of said note constitutes a valid and existing lien upon the property described therein. We further find that the sum of $200 has been paid to defendant out of the funds of plaintiffs and that same has been credited on said $3000 note.

It is therefore ordered that the judgment of the trial court be reversed and that the cause be remanded with directions to the trial court to dismiss the petition of plaintiffs and to enter judgment in favor of defendant against plaintiff Fred J. Linneman for the amount of said note, together with interest thereon, less the sum of $200 paid thereon, and to enter a decree establishing said deed of trust as a legal, binding and enforceable lien against the property therein described for the payment of said $3000-note, less said payment, and to enter an order foreclosing said deed of trust and directing the sale of the property therein described in payment and satisfaction of said $3000-note, and to tax the costs of suit against plaintiffs. *White, J.,* concurs; *Walker, J.,* dissents in a separate opinion.

PER CURIAM:—The foregoing opinion of Blair, J., in Division Two, is adopted as the opinion of the Court en Banc. All concur, except *Walker, J.,* who dissents in separate opinion, and *Graves, J.,* who is absent.

WALKER, J., (dissenting).—I do not concur in the conclusion reached by my learned brother in this case. The parties dealt with each other at a great disadvantage to the plaintiffs. The latter were ignorant and inexperienced in the affairs of business, while the defendant was a lawyer, familiar with every feature of the transaction in which the note and deed of trust for $3000 were obtained from the plaintiffs. It does not satisfy the rule of reason or harmonize with human experience to say that the defendant's acts are not culpable because it is not shown that he overpersuaded or unduly influenced the plaintiffs. The methods employed in the perpetration of a fraudulent transaction are as multifarious as the operations of the human mind. Overpersuasion or undue influence, to one skilled in artifice, are, in the presence of pitiable ignorance, unnecessary instrumen-

316 Mo.—44.

talities in the perpetration of a fraud. The ignorance of the plaintiffs of the real nature of the transaction rendered overpersuasion and undue influence unnecessary. The ignorant are most easily imposed upon. One dealing with them, although sustaining no fiduciary relation, is required, if cognizant of their ignorance, to avoid even the semblance of deception, and to deal fairly and openly with them, leaving nothing to inference or assumption. The encompassing arm of equity would be far too short if it did not require an adherence to this rule; much more strict should be its application when an attorney, resting under the shield of an ignorant client's confidence, creates an obligation and a lien in his own favor while conducting another and a different transaction as their trusted adviser. There is no more sacred relation than that which should subsist between a lawyer and his client. The ecclesiastic may extend spiritual consolation; the physician may minister to physical ailments, but the trusted lawyer has in his care and keeping his client's life, liberty and property. Whether one or the other of these rights are involved, the lawyer should so conduct himself in their protection as to leave in the disinterested mind no ground for criticism, much less complaint.

The testimony of the defendant, construed in his favor as liberally as its context will admit, does not, taken as a whole, savor of that candor which should characterize the conduct of a trusted attorney. Nor does it indicate to even the lay mind, much less that of an experienced lawyer, the performance of duties involving the exercise of legal judgment or of such vital importance during the period of his employment as to authorize the execution to him by the plaintiffs of a note for $3,000 and a deed of trust to secure the same. If any considerable amount had been due the defendant for past services he would have been enabled, despite the alleged unfortunate destruction of his papers, to have given a detailed and a convincing statement of the nature and extent of his services. Instead of this, although afforded, by the liberality of the rulings of the trial court, ample opportunity to explain the nature of his services, he contended himself with vaguely stating his agreement with the plaintiffs as to what Linneman was to pay him for his services for a year, as follows: "It wasn't altogether for a year, it was what he owed me back, and I was to represent him for the continuation of that year that I started in on, and he gave me his note for $3000 for all I had done. I let him set the value on the services himself, including what he owed me before."

The chancellor, evidently seeking to ascertain definitely what legal services had been performed by the defendant, asked him to explain the nature of the last legal service rendered by him and what he charged for same, to which he replied: "That included all he had owed me, his promise on what he owed me back. That was about October

1, 1920, and the note was given me on the last day of December, 1920. He then had disposed of this property and got it in some shape and I wanted my fee secured, although my time wouldn't be up until the next October. I told him I thought I ought to be secured as much as I had done for him, and we agreed on what he owed me and he set the amount himself on the $3000 for what I had done for him.'' After the court again asked him; ''What period of time does that $3000 cover?'' The defendant answered: ''Well, including that year, about ten years.''

The foregoing is a fair sample of the defendant's testimony as to the character of his services. Summing up what may be fairly said to be his relevant testimony, his services· consisted in advising the plaintiff concerning different business transactions, none of which required legal judgment, but could as well have been performed by any man of average intelligence and a reasonable amount of business experience. One matter may be excepted from this classification and that was a suit conducted by the defendant for the plaintiff which upon appeal to the Kansas City Court of Appeals was determined adversely to the contention of the defendant.

The sixty and more pages of the abstract of the testimony of the defendant, both upon direct and cross-examination, have been examined in vain to discover any definite legal services of moment rendered by him during the years he claims to have been employed by the plaintiff, for the payment of which defendant drew the note for $3000 and deed of trust to secure the payment of the same. This transaction was coupled strangely with another and different matter, concerning the good faith of which there is no question. Will it be questioned by any one of average intelligence that if such services had been rendered the defendant would not have been able readily and definitely to state of what they consisted, the time occupied in their performance and the charges made by him therefor. If it be true that these services—more in the nature of those of a scrivener, a real estate dealer or one familiar with the relative values of property—had really been rendered by the defendant and he had not been paid for the same, the reasons are stronger why he would have kept at least a memorandum of their nature and of the time consumed in their performance, and the fees charged for his services. Instead of this, if the defendant is to be believed, he spent eight or ten years in effecting sales and making land trades for the plaintiff for which he neither demanded nor received at the time any compensation; but on the contrary oftentimes advanced his own money for the plaintiff in traveling and other incidental expenses. Barring any comment as to the unusual character of this conduct in a country lawyer to whom, as a rule, retainers do not roll like gifts from the horn of Amalthea, it may be said that, to have pursued the course the

defendant defines, he must have had the patience of the Man of Uz, the touch of Midas and the open palm of the Mother of Plenty.

Appreciating the obstacles disclosed by the evidence which bar belief in the defendant's statement, the chancellor who sat in judgment in his case, with ripened judgment and seasoned experience, either refused to believe the defendant or with wise discrimination separated his limited legal services shown by the record, from his other numerous purely business transactions with the plaintiff, and held that there was no merit in his defense.

The testimony of the witness Hannaca, for the defendant, when analyzed, lends no corroboration to defendant's contention as to the nature of his employment. Concerning an exchange of property between the plaintiff and the witness the latter testified that the defendant wrote the contract. The witness also stated he heard the defendant say in the presence of the plaintiff that the latter had not paid him anything in ten years; and also that "there was no use of their paying a real estate agent a commission when they had employed him by the year;" that the wife of the plaintiff then said: "We will see that you are well paid."

This testimony, while technically admissible, has little probative force under the pleadings. The defendant himself testified definitely, except as we have indicated, to the performance of no legal services. What services therefore had been rendered by him for which the plaintiff had not paid him are not shown, nor are they attempted to be shown by this witness. It is not shown that the plaintiff heard this conversation or if he heard it that he made any reply or understood its purport. Further than this, the assurance of the defendant that they did not need a real estate agent as they had employed him, is indicative, if of anything, of like employment on the part of the defendant, which is not within the purview of his pleading. In reply thereto the remark of the wife that "he would be well paid," authorizes the conclusion that she was ignorant of the note and deed of trust, as these, according to the defendant's contention, evidenced his payment for past and present services. If he had thus been paid, a fact she must have known if she wittingly joined in the deed of trust to secure the payment of the note, she would not have said: "We will see that you are well paid."

The testimony of this witness, therefore, when properly construed, tends rather to sustain the contention of the plaintiffs than that of the defendant.

Linas Gheens, a name which savors in sound of Chariton Bottom, was asked by counsel for the defendant if in the latter part of February, 1921, he didn't hear Fred Linneman say that "we have Mr. Henry employed by the year," to which he answered affirmatively; in addition, counsel further asked him if he didn't then ask Linne-

man: "How much are you paying him?" and that Mrs. Laura Linneman said: "Three thousand dollars. Look what he has done for us." In further disregard of the most elementary rules of evidence counsel proceeded in like manner to interrogate the witness as to his estimate of the amount of the fee. No attempt was made to determine what services were referred to or the occasion of his employment. Passing the manner of its introduction, testimony of this character can scarcely be said to rise to the dignity of proof of a lawyer's services, especially in the absence of any evidence that an occasion existed for such a declaration on the part of Mrs. Linneman to a casual visitor. The entire conversation, measured by its subject-matter and the manner in which the witness was interrogated to secure its introduction, does not ring with sincerity or bear the hallmark of that virtue of which it was said on the willow-fringed banks of the Euphrates in the long ago: "Great is truth and it will prevail."

The examination of other witnesses for the defendant, viz: Gaines and Connard, although the subject-matter of the testimony sought to be obtained from them was detailed to them by counsel for the defendant in his questions, elicited nothing more than that the plaintiff is one instance said that "he had the defendant employed by the year" and in the other that the plaintiff "had a lawyer by the year." Comment is unnecessary to demonstrate the utter lack of probative force of this testimony to establish the performance of legal services. There is a time-honored rule of equity that where the evidence is uncertain to establish a controverted fact, a court of review will persuasively regard the findings of the trial judge. No case has been submitted to our consideration which calls more insistently for the application of this rule than that at bar. After having read with discriminating care the testimony in this case we have examined the findings and judgment of the special judge who presided over the deliberations of the court during this hearing. It comprises a clear and comprehensive review of the entire testimony.

While this transcript is marked, as we think, with too much latitude in the admission of testimony—probably more permissible in equity cases than in others—the findings of the trial judge evince a well tempered judicial attitude and a proper estimate of the probative force of the testimony of the different witnesses. Seeing them, hearing them and probably knowing them personally, he was more able to correctly weigh their testimony than one who has access only to the printed record. Armed with these opportunities more than the ordinary reasons exist for our adherence to the persuasive rule of deference to the findings and conclusions of the trial judge. This is especially true where, as at bar, they accord with reason and do equity.

Thus moved we are of the opinion that the judgment of the trial court should be affirmed.