HANS DEMMEL and ANNA M. DEMMEL, Appellants, v. EVAN H. HAMMETT and PEARL E. HAMMETT, alias PEARL E. HORNER, and FRANCES B. McKEE and EVAN H. HAMMETT, INC., a Corporation, Respondents, No. 41597—230 S. W. (2d) 686.

Division Two, June 13, 1950.

*Franklin D. Glore* for appellants.

*Clif. Langsdale* and *John J. Manning* for respondents.

 BARRETT, C.—This is a suit by Hans and Anna M. Demmel to cancel certain deeds. The defendants are a lawyer, Evan H. Hammett, and his former wife, and Frances B. McKee and a corporation, Evan H. Hammett, Inc. Miss McKee was a "straw" party to one of the deeds and has no interest in this appeal. Nelson v. Hammett, (Mo.) 189 S. W. (2) 238. The corporation filed an answer in which it claimed to be an innocent purchaser for value of a one half interest in the property but Mr. Hammett has handled the corporation's affairs and for the purposes of this appeal is treated as standing in his shoes. 7 C. J. S., Sec. 128, p. 969. The corporation does not claim otherwise upon this appeal. Mrs. Hammett does not claim to have acquired any greater rights in the property than her former husband acquired. In short the respondents' rights are all dependent upon the rights of Mr. Hammett and for the purposes of this appeal he is treated as the respondent.

The background of the litigation is this: In 1928 Mr. and Mrs. Demmel purchased the property known as 3728 Garfield. The property was then subject to a deed of trust securing a note for $3,000.00 upon which there was an unpaid balance of $2,478.65. In August 1934 the Demmels refinanced their loan with the Home Owners Loan Corporation and executed a new deed of trust securing an indebtedness of $2,761.40. The monthly payments on the loan were $24.08. Mr. Demmel was on WPA and finally could not meet the payments and he and Mrs. Demmel moved and turned the management of the property over to a real estate company. The company

rented the property for $24.00 a month and applied the rent on the HOLC loan but by June 1940 the loan was delinquent and the HOLC was about to foreclose the deed of trust. The Demmels claim that they were not aware of the fact that the loan was in default until they received a letter from Mr. Hammett's wife.

Mrs. Hammett had an office in the Keith and Perry Building with her husband. She was in the real estate business under her maiden name of Pearl E. Horner. On August 31, 1940 the Demmels received the following letter from her:

"I can help you refinance the loan on your property at 3728 Garfield Avenue, Kansas City, Missouri, before 2 P.M. on September 16, 1940 (date of trustee's sale as per the enclosed trustee's sale notice), and, if you need additional time thereafter to refinance same, I can help you to redeem this property from this foreclosure sale.

"A conference with me, without obligation to you, will convince you of my ability and facilities to serve you in this matter. Do not delay seeing me.

Yours very truly,
Pearl E. Horner."

In response to this letter Mr. and Mrs. Demmel called at Miss Horner's office in the Keith and Perry Building. Miss Horner was not in the office and Mr. Hammett told them that he would handle the matter. The Demmels did not know that Miss Horner was in fact Mrs. Hammett. Mr. Hammett told them that in order to protect the property it would be necessary to convey it to some other person. Accordingly Mr. and Mrs. Demmel executed a warranty deed to Elizabeth Haverty dated and acknowledged September 16, 1940. They also executed a second deed, they say on September 16, 1940 and Mr. Hammett says on September 2, 1941. Frances B. McKee, an office associate of Mrs. Hammett's, was the grantee in that deed. In order to stop the foreclosure Mr. Hammett prepared a redemption notice and paid the HOLC $177.48. In order to raise that sum Mr. Hammett borrowed $100.00 from Elizabeth Haverty. The real estate agent who had been handling the property for the Demmels gave him $51.00. The Demmels collected $25.00 rent from the tenant and gave him that sum. He added $1.33 of his own money and thus raised $177.48. It developed later that there was a further item of $79.17 due the HOLC and Mr. Hammett borrowed an additional sum of $52.60 from Miss Haverty, added $26.57 of his own funds and thus satisfied the balance of the arrearages. In August 1941 the tenant moved from the property and the Hammetts moved in and so notified the Demmels. On December 15, 1941 Mr. Hammett wrote the Demmels the following letter:

"This is to advise you that on Friday, December 12, 1941, upon demand of Frances B. McKee, I delivered the warranty

deed, together with assignment of insurance, in triplicate, covering property at 3728 Garfield Avenue, Kansas City, Missouri, to her, thereby concluding the above foreclosure matter.

"As soon as you are able to submit an offer to repurchase this property, kindly communicate with me."

Mr. Hammett says that the Demmels had an oral option to redeem the property within a year. They testified that the subject was not discussed. In any event Mr. Hammett says that his services as the Demmels' lawyer "expired by operation of law" as of midnight on September 15, 1941 when they failed to repurchase and on December 12, 1941 he purchased the property from Miss Haverty for $204.98 which included her advancements of $152.60 and $50.00 profit to her for her loans. Mr. Hammett had retained both deeds in his file and on December 12, 1941 he says that he held the deeds in one hand and a check in the other and gave Miss Haverty her choice and she elected to take the check. The deed to Miss McKee was recorded on December 13, 1941 and the Haverty deed was recorded on July 30, 1948. Miss McKee deeded the property to Mr. and Mrs. Hammett on the 18th day of April 1944. Miss Haverty gave Mr. Hammett a quitclaim deed in February 1948. This action was instituted in September 1947. It may be noted that the Demmels did not respond to the letter of December 15, 1941 and that throughout the period they have been unable to pay the sums necessary to redeem the property. In 1945 or 1946 they did have $400.00 but rather than attempt to redeem this property they purchased another house.

The theory of their action was that Mr. Hammett had procured the deeds by fraud and undue influence but the trial court said: "I am convinced that the purpose of this transaction was to give the plaintiffs an opportunity to save this property during the period of a year. There isn't anything here to indicate that they were denied that privilege during the year; * * * ." As to fraud, the court said: "Although Mr. Hammett's actions were not all that they should have been I just do not believe they amount to fraud, that the plaintiffs were defrauded in this transaction. Their own conduct does not tend to prove that they considered themselves defrauded at all. * * * I just do not believe that there was fraud in this matter; therefore, the plaintiffs' petition is dismissed." We accept the court's finding as to these issues and for that reason we have not set forth in detail the conflicting testimony.

But our deference to the court's finding on those issues does not entirely dispose of the cause. Mr. Hammett is a lawyer and his conduct and the validity of this transaction is to be tested by these rules: " * * * an attorney cannot deal for himself in the subject-matter of the litigation to the prejudice of his client's interest, *and can in no case, without the client's consent, buy and hold, other-*

*wise than in trust, any adverse title or interest touching the thing to which his employment relates; all such purchases inure to the benefit of the client.* It is contrary to the policy of the law, and also contrary to the principles of equity, to permit an attorney at law to oc-́cupy at the same time and in the same transaction the antagonistic and wholly incompatible position of adviser of his client concerning a pending litigation threatening the title to his property and that of the purchaser of such property in opposition to the title of his client." 5 Am. Jur., Sec. 58, p. 293. Mr. Hammett says that the relationship of attorney and client "expired by operation of law" at midnight on September 15, 1941 but the rule applies, once the relationship attaches, either before or after the cause is ended. 5 Am. Jur., Sec. 59, p. 294. This is not to say that in no event may an attorney buy his client's property (7 C. J. S., Sec. 126(b), p. 961) but "The question of good faith on the part of an attorney in acquiring an interest adverse to that of his client, the fairness of the transaction, or the adequacy of consideration will not as a general rule be inquired into where the client seeks to secure the benefit of a purchase made by his attorney for his own interest or benefit *and without the knowledge or consent of the client. * * * If, however, the client intended that the attorney should make the purchase for himself and acquiesced in his action, the transaction will be upheld if open, honest, and fair.*" 5 Am. Jur., Sec. 62, p. 295; 7 C. J. S., Sec. 126, p. 960. As to Mr. Hammett's conduct as a lawyer the court said: "The Court does not at all approve of the manner in which Mr. Hammett, the defendant Evan H. Hammett, handled this transaction for the plaintiffs as their attorney. * * * It may even amount to some professional misconduct on his part by not communicating with them more fully during the interim in which this property was being held."

Grayson v. Weddle, 63 Mo. 523; Bliss v. Prichard, 67 Mo. 181; Ward v. Brown, 87 Mo. 468; Wilber v. Robinson, 29 Mo. A. 157 and Linneman v. Henry, 316 Mo. 674, 291 S. W. 109 illustrate the candor required of a lawyer when he purchases his client's property and the requisite knowledge or acquiescence on the part of the client. In those cases lawyers purchased their clients' property at execution sales or foreclosures and the transactions were upheld because the lawyers made full disclosure or the clients had knowledge of the transactions and acquiesced in them over a period of years, nine years in one instance and seven in another. In this case Mr. Hammett did not inform the Demmels that he had purchased or acquired the title to their property. He told them that it would be necessary to make a conveyance of the property and they understood what a "conveyance" meant but he did not tell them that he was to be the purchaser or that he was going to hold the deeds in his own file and record them as and when he did. In September 1941 he told them that he and Mrs. Hammett had moved into the property but there

was no indication that he was going to purchase it or that he in fact then held the unrecorded deeds in the name of one "straw" party, Miss McKee, or that he intended to purchase from Miss Haverty. When he wrote them on December 15, 1941, advising them to communicate with him if they desired to "repurchase" the property he did not advise them of the fact that he had in fact purchased it himself on the 12th day of December for $204.98. Instead, he said: "This is to advise you that on Friday, December 12, 1941, upon demand of Frances B. McKee, I delivered the warranty deed * * * covering property at 3728 Garfield Avenue, Kansas City, Missouri, to her, thereby concluding the above foreclosure matter." Miss McKee was a "straw" party, had no interest whatever in the property and the deed was not delivered to her. She may have held the title for Miss Haverty but the important fact is that the Demmels were not informed that their lawyer had acquired the title to their property. In short, Mr. Hammett's conduct and his acquisition of his clients' property was lacking in the candor required of a lawyer when he deals with his clients' property. He did not acquire the property in the regular course of a business transaction free from his relationship as a lawyer for the Demmels and in the circumstances the transaction falls within Edwards v. Gottschalk, 25 Mo. A. 549; Davis v. Kline, 96 Mo. 401, 9 S. W. 724; Eoff v. Irvine, 108 Mo. 378, 18 S. W. 907; Bucher v. Hohl, 199 Mo. 320, 97 S. W. 922 and Kleber v. Carlos, (Mo.) 202 S. W. (2) 865. The fact that no fee was asked or paid does not alter the situation (Eoff v. Irvine, supra) and in view of the dates upon which the various deeds were recorded and Mr. Hammett's title was perfected and upon which the Hammetts acquired knowledge of all the facts they were not guilty of laches in instituting the action even though the property had then doubled or trebled in value and became the true motive for this action. Ann. Cas. 1915C, p. 953, 955; 5 Am. Jur., Sec. 63, p. 296.

 He is entitled, however, to a reasonable fee and to reimbursement for his advances. Eoff v. Irvine, supra; Kleber v. Carlos, supra; Addison v. Cope, 210 Mo. A. 569, 243 S. W. 212.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.